Miles N. Clark, Esq.
Nevada Bar No. 13848
KNEPPER & CLARK LLC
10040 W. Cheyenne Ave., Suite 170-109
Las Vegas, NV 89129
Phone: (702) 825-6060
FAX: (702) 447-8048
Email: matthew.knepper@knepperclark.com
Email: miles.clark@knepperclark.com

Sean N. Payne, Esq.
Nevada Bar No. 13216
PAYNE LAW FIRM LLC
9550 S. Eastern Ave., Suite 253-A213
Las Vegas, NV 89123
Phone: (702) 952-2733
FAX: (702) 462-7227
Email: seanpayne@spaynelaw.com

David H. Krieger, Esq.
Nevada Bar No. 9086
HAINES & KRIEGER, LLC
8985 S. Eastern Ave., Suite 350
Henderson, NV 89123
Phone: (702) 880-5554
FAX: (702) 385-5518
Email: dkrieger@hainesandkrieger.com

*Attorney for Plaintiff*

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| LLOYD W. SIDWELL, | Civil Action No.: |
| Plaintiff, | |
| v. | **COMPLAINT FOR DAMAGES** |
| | **PURSUANT TO THE FAIR CREDIT** |
| EQUIFAX INFORMATION SERVICES, LLC; EXPERIAN INFORMATION SOLUTIONS, INC; and TRANS UNION LLC, | **REPORTING ACT, 15 U.S.C. § 1681, ET SEQ.** |
| | **JURY TRIAL DEMANDED** |
| Defendants. | |

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as this case alleges a violation of federal law, specifically the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA").

2. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) & (c), because Plaintiff resides within the District of Nevada, a substantial portion of the events or omissions giving rise to the claim occurred in this District, and Defendants regularly conduct business in this District.

## INTRODUCTION

3. The United States Congress has found the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system. Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"), to insure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy. The FCRA also imposes duties on the sources that provide credit information to credit reporting agencies, called "furnishers."

4. The FCRA protects consumers through a tightly wound set of procedural protections from the material risk of harms that otherwise flow from inaccurate reporting. Thus, through the FCRA, Congress struck a balance between the credit industry's desire to base credit decisions on accurate information, and consumers' substantive right to protection from damage to reputation, shame, mortification, and the emotional distress that naturally follows from inaccurate reporting of a consumer's fidelity to his or his financial obligations.

5. Lloyd Sidwell ("Plaintiff"), by Plaintiff's attorneys, brings this action to challenge the actions of Equifax Information Services, LLC ("Equifax"), Trans Union, LLC ("TransUnion"), and Experian Information Solutions, Inc. ("Experian") (or jointly as "Defendants") with regard to erroneously reporting incomplete and inaccurate credit information.

6. Defendants failed to properly investigate Plaintiff's credit report disputes, damaging Plaintiff's creditworthiness and "failing to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates" as statutorily mandated pursuant to 15 U.S.C. §1681e(b).

7. Further, Defendants also failed to comply with their duties under 15 U.S.C. §1681i(a)(1), which requires that credit reporting agencies "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information."

## PARTIES

8. Plaintiff, Lloyd Sidwell, is an adult individual and at all relevant times has been residing in Clark County, Nevada.

9. Plaintiff is, and at all times relevant was, a "consumer" as that term is understood under 15 U.S.C. § 1681a(c).

10. Defendant Equifax is Georgia limited liability corporation with its principal place of business in Georgia and doing business in Nevada. Defendant Equifax is a "Consumer Reporting Agency" (or "CRA"), as that term is defined by 15 U.S.C. § 1681a(f). Defendant Equifax is also a "Consumer Reporting Agency that Compiles and Maintains Files on Consumers on a Nationwide Basis," as that term is defined under 15 U.S.C. § 1681a(p).

11. Defendant Experian is a corporation with its principal place of business in Ohio and doing business in Nevada. Defendant Experian is a "Consumer Reporting Agency" (or "CRA"), as that term is defined by 15 U.S.C. § 1681a(f). Defendant Experian is also a "Consumer Reporting Agency that Compiles and Maintains Files on Consumers on a Nationwide Basis," as that term is defined under 15 U.S.C. § 1681a(p).

12. Defendant TransUnion is a Delaware limited liability corporation doing business in Nevada. Defendant TransUnion is a "Consumer Reporting Agency" (or "CRA"), as that term is defined by 15 U.S.C. § 1681a(f). Defendant TransUnion is also a "Consumer Reporting

Agency that Compiles and Maintains Files on Consumers on a Nationwide Basis," as that term is defined under 15 U.S.C. § 1681a(p).

## GENERAL ALLEGATIONS

13. On or about June 17, 2011, Plaintiff filed for Chapter 13 Bankruptcy in the United States Bankruptcy Court for the District of Nevada pursuant to 11 U.S.C. § 1301 *et seq*. Plaintiff's case was assigned Case Number 11-19553-lbr (the "Chapter 13" or "Bankruptcy").

14. At the time the Bankruptcy was filed, Plaintiff owned real property located at 1235 Fairchild Street, Las Vegas, Nevada 89110 (the "Property").

15. The Property is subject to a mortgage loan and secured by a deed of trust serviced by BAC Home Loans ("BANA") (the "BANA Debt").[1]

16. Plaintiff included the BANA Debt in his Bankruptcy Schedules, and BANA, or its predecessor in interest, received notice of the Bankruptcy.

17. On October 10, 2012, the bankruptcy court entered an order confirming Plaintiff's Chapter 13 Plan (the "Confirmed Chapter 13 Plan" or "Confirmation Order").

18. Plaintiff made all payments required under the terms of the Confirmed Chapter 13 Plan, which included ongoing, post-petition contract installment payments directly to BANA, or its predecessor, on the BANA Debt.

19. Further, on or about July 7, 2016, the Chapter 13 Trustee filed a Notice of Final Cure Payment ("NFC") indicating that the amount required to cure the pre-petition default, if any, on the BANA Debt was paid in full.

20. On or about September 8, 2016, after Plaintiff successfully completed all payments required to all creditors under the Confirmation Order, including payments to BANA, Plaintiff received his bankruptcy discharge per entry of order by the Bankruptcy Court (the "Discharge").

---

[1] Plaintiff's loan was serviced by BAC Home Loans, although on Plaintiffs' consumer disclosures this interest is attributed to "Bank of America."

21. Since completing his Bankruptcy, Plaintiff has remained current on the BANA Debt, and continues to make timely payments to BANA on the BANA Debt through present date.

22. To the extent that Plaintiff's creditors, such as BANA, elected to furnish data to a CRA consistent with the terms of the Confirmation Order, such data should have been included in Plaintiff's "consumer file."

23. Pursuant to 15 U.S.C. §1681g(a)(1), "[e]very consumer reporting agency shall, upon request, clearly and accurately disclose to the consumer…[a]ll information in the consumer's file at the time of the request," subject to the Plaintiff providing "proper identification" pursuant to 15 U.S.C. §1681h(a)(1).

24. "The term 'file', when used in connection with information on any consumer, means all of the information on that consumer recorded and retained by a consumer reporting agency regardless of how the information is stored." 15 U.S.C. §1681a(g).

25. In the current matter, the Defendants failed to comply with their statutory obligation to provide Plaintiff all information in Plaintiff's consumer file thereby violating the above defined statutory obligations.

26. Additionally, the Defendants' conduct described herein also failed to comply with the Consumer Data Industry Association ("CDIA")'s Metro 2 reporting standards ("Metro 2"), which provides guidance for credit reporting and FCRA compliance.

27. The CDIA publishes the Metro 2 reporting standards to assist furnishers and CRAs (like the Defendants) with their compliance requirements under the FCRA.

28. Courts rely on such guidance to determine furnisher liability. *See e.g*. *In re Helmes*, 336 B.R. 105, 107 (Bankr. E.D. Va. 2005).

29. Upon information and belief, Defendants herein adopted and at all times relevant implemented the Metro 2 format.

30. Upon information and belief, each Defendant named herein adopted the Metro 2 reporting standards and at all times relevant implemented the Metro 2 format as an integral

aspect of their respective duties under the FCRA to have in place adequate and reasonable policies and procedures to handle investigations of disputed information.

31.     The Metro 2 format guidelines for credit reporting are nearly identical for reports made during the "Month BK Filed," "Months Between Petition Filed and BK Resolution," "Plan Confirmed" and, in this case "Plan Completed – All payments made according to plan – consumer continues to make payments on Secured Debt (example: mortgage)" for Chapter 13 Debtors and furnishers who choose to report post-bankruptcy credit information to CRAs.  *See e.g.*, 2015 CDIA Credit Reporting Resource Guide ("2015 Metro 2"), Frequently Asked Question 28(a), at pages 6-21 through 6-22.

32.     Thus, many of the consumer reporting fields should be reported the same way both during and after a bankruptcy proceeding, *id.*, with the following relevant exceptions:

   a. Current Balance

      i. For the "Month BK Filed" and "Months Between Petition Filed & BK Resolution," Metro 2 instructs the furnisher to report the **outstanding balance amount**.  *Id*.
      ii. However, for the "Plan Confirmed" period, Metro 2 instructs the furnisher to report the "**Chapter 13 plan balance, which should decline as payments are made**."  *Id*. at 6-22.
      iii. And, for Current Balance reporting when "Plan Completed – All payments made according to plan – no further obligation," Metro 2 instructs the furnisher to report a current balance of "**Zero**."
      iv. Plan Completed – All payments made according to plan – consumer continues to make payments on Secured Debt (example: mortgage) Metro 2 instructs the furnisher to report the "*Outstanding balance amount*."  *Id*.

   b. Scheduled Monthly Payment Amount:

      i. For the "Month BK Filed" and "Months Between Petition Filed & BK Resolution," Metro 2 instructs the furnisher to report the "**contractual monthly payment amount.**"  *Id*. at 6-21.
      ii. However, for the "Plan Confirmed" period, Metro 2 instructs the furnisher to report the "**Chapter 13 Payment Amount**."  *Id*. at 6-22.
      iii. And, for Scheduled Monthly Payment Amount reporting when "Plan Completed – All payments made according to plan – no further obligation," Metro 2 instructs the furnisher to report a current balance of "**Zero**."  *Id*.

    iv. Plan Completed – All payments made according to plan – consumer continues to make payments on Secured Debt (example: mortgage) Metro 2 instructs the furnisher to report the outstanding balance amount "***updated contractual monthly payment amount.***"

  c. <u>Account Status</u>:

    i. For the "Month BK Filed", "Months Between Petition Filed & BK Resolution," "Plan Confirmed" and "Plan Completed – All payments made according to plan – no further obligation," Metro 2 instructs the furnisher to report the "**status at time of petition**."
    ii. However, for the "Plan Completed – All payments made according to plan – consumer continues to make payments on Secured Debt (example: mortgage)" Metro 2 instructs the furnisher to report "***status that applies.***" *Id.* at 6-22.

  d. <u>Payment History</u>:

    i. For the "Month BK Filed" and "Months Between Petition Filed & BK Resolution," Metro 2 instructs the furnisher to report the "**contractual monthly payment amount**." *Id.* at 6-21.
    ii. However, for the "Plan Confirmed" period, Metro 2 instructs the furnisher to report the "**Chapter 13 Payment Amount**." *Id.* at 6-22.
    iii. And, for Scheduled Monthly Payment Amount reporting when "Plan Completed – All payments made according to plan – no further obligation," Metro 2 instructs the furnisher to report a current balance of "**Zero**." *Id.*
    iv. And, as applicable here, for "Plan Completed – All payments made according to plan – consumer continues to make payments on Secured Debt (example: mortgage)" Metro 2 instructs the furnisher to report the outstanding balance amount "***first month, increment first position with value 'D'; in subsequent months, increment based on prior month's status.***"

33.    Metro 2 Format's instructions require identical reporting for FAQ 28a's field "Date of Account Information", which should equal the "current month's date."

34.    Despite Metro 2 Format's instructions, the Defendants named herein failed to conform to the Metro 2 Format when reporting on Plaintiff's accounts after Plaintiff filed Bankruptcy as further set forth below.

35. In turn, the Defendants rereported inaccurate and incomplete information, thus violating their duty to follow reasonable procedures to assure maximum possible accuracy under 15 U.S.C. §1681e(b) when providing a Plaintiff a consumer file.

36. To this end, the incomplete reporting provided to the Plaintiff as described herein departed from the credit industry's own reporting standards, and was not only inaccurate and incomplete, but also materially misleading under the CDIA's standards as well.

37. A "materially misleading" statement is concerned with omissions to credit entries, that in context create misperceptions about otherwise may be factually accurate data. *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009).

38. Upon information and belief, the failure to accurately report complete information about an account, particularly positive payment history on a mortgage account, significantly impacts an individual's credit score.

39. By electing to suppress positive payment history relating to an account on which an individual is making regular, timely payments, CRAs create misleading impressions on future credit decision makers, and deprive individuals of the benefit to their credit scores which stem from making regular, timely payments.

## THE EQUIFAX VIOLATIONS

### Equifax Failed to Timely Reinvestigate Plaintiff's January 20, 2017 Dispute

40. In an Equifax credit report dated November 1, 2016, Confirmation No. 6306044982 ("Equifax Report"), Plaintiff believed that several data furnishers allegedly reported inaccurate, derogatory information. Among other things, Plaintiff believed that American Honda Finance Corp., Macy's/Dsnb, and Syncb/JCPenneys, Taylor, Bean & Whitaker, and Wells Fargo were reporting inaccurate information about him.

41. On or about 1/24/2017, Plaintiff disputed the allegedly derogatory information on the Equifax Credit Report by notifying Equifax, in writing, of incorrect and inaccurate credit

information contained therein, and requested that this information be corrected (the "First Equifax Dispute Letter.").

42. Plaintiff mailed the First Equifax Dispute Letter to Equifax certified, return receipt.

43. After receipt of the First Equifax Dispute Letter, Equifax was required to conduct a reasonable reinvestigation of the dispute to determine whether the disputed information was inaccurate.  15 U.S.C. § 1681i.

44. Specifically, Equifax was required where applicable to provide the disputed information to all data furnishers of those disputed items no later than five days after receipt of the Dispute Letter.  15 U.S.C. § 1681i(a)(2)(A).

45. Equifax was required to conduct this reinvestigation before the end of the 30-day period after receiving the Dispute Letter.  15 U.S.C. § 1681i(a)(1)(A).  This period could be extended for not more than 15 days if Equifax received additional relevant information from Plaintiff during the 30-day reinvestigation period.  15 U.S.C. § 1681i(a)(1)(B).  However, Plaintiff provided no additional relevant information to Equifax during the 30-day reinvestigation period, and so Equifax's deadline to reinvestigate and notify Plaintiff was not extended.

46. Equifax was further required to notify Plaintiff of the results of its reinvestigation in writing before the expiration of the 5-day period following completion of its reinvestigation.  15 U.S.C. § 1681i(a)(6)(A).

47. In the event Equifax determined during the course of its reinvestigation that Plaintiff's dispute was frivolous or irrelevant, Equifax was also required to notify Plaintiff in writing of that determination no later than 5 days after making that determination.  15 U.S.C. § 1681i(a)(3)(B).

48. However, Equifax never timely responded to the First Equifax Dispute Letter at all by notifying Plaintiff, in writing or otherwise, within the time limits specified above, either

that it had completed its reinvestigation of Plaintiff's dispute, or determined that the dispute was frivolous and/or irrelevant and terminated its reinvestigation.

49. Because Equifax failed to timely respond to the First Equifax Dispute Letter, Plaintiff had no way of knowing whether Equifax timely notified Hyundai or any other data furnisher of disputed information as 15 U.S.C. § 1681i required, nor whether Hyundai or any other furnisher conducted a timely and proper investigation of the disputed information as required by 15 U.S.C. § 1681s-2(b).

50. Because Equifax failed to timely respond to the First Equifax Dispute Letter, Plaintiff also could not determine whether, pursuant to its duty under 15 U.S.C. § 1681i(a)(5)(A)(i) and (ii), Equifax timely found the information he disputed was inaccurate.

51. Even if Equifax did in fact conduct a timely reasonable reinvestigation of Plaintiff's disputed information, or concluded that his dispute was frivolous, it failed to timely notify Plaintiff of the same in writing or otherwise, in violation of 15 U.S.C. § 1681i(a)(6)(A) and/or 15 U.S.C. § 1681i(a)(3)(B).

52. Equifax's failure to timely notify Plaintiff of the results of a reinvestigation, or notify Plaintiff that the dispute was frivolous, violated 15 U.S.C. § 1681i.

53. Equifax's failure to timely notify Plaintiff was at least negligent. 15 U.S.C. § 1681o.

54. On information and belief, in failing to timely notify Plaintiff, Equifax not only recklessly disregarded its reinvestigation obligations, but also lowered its own costs of conducting reinvestigations. Equifax's derogation of its statutory duty was thus willful. 15 U.S.C. § 1681n.

55. On 3/20/2017, with no word from Equifax, Plaintiff sent a letter informing Equifax of its failure to notify him of the dispute results ("Second Equifax Dispute Letter").

56. Equifax's failure to timely conduct a reasonable reinvestigation and/or frivolousness determination, and notify Plaintiff of the same, has caused Plaintiff to suffer actual damages, including out-of-pocket expenses incurred in the time necessary to consider and send a

subsequent dispute letter re-disputing all prior information. 15 U.S.C. § 1681o, 15 U.S.C. § 1681n.

57. Equifax's failure to timely notify Plaintiff has also caused him to suffer a concrete informational injury, as Plaintiff had a statutorily guaranteed right to receive a timely response to his consumer dispute, which Equifax failed to provide.

58. Plaintiff has been obligated to retain an attorney to prosecute this dispute, and has incurred attorney's fees and costs as a result. 15 U.S.C. § 1681o, 15 U.S.C. § 1681n.

### Equifax Failed to Report Complete Information about BANA Home Mortgage Account No. 10323

59. In the Equifax Report and in a subsequent March 20, 2017 Equifax Report, Equifax failed to provide a "complete" and "accurate" Experian Disclosure to Plaintiff.

60. On information and belief, Equifax "suppressed" positive data being furnished from BANA.

61. Alternatively, Equifax failed to report timely mortgage payments on the BANA Debt related to the Property reported by BANA between January 16, 2014 through March 2016 ("Positive Suppressed Data").

62. This failure caused Plaintiff's Experian Disclosure to include materially misleading omissions, which in context created misperceptions about the Plaintiff's timely (yet unreflected) monthly payments to BANA.

63. Specifically, on information and belief BANA furnished positive credit data to Equifax stating that the Plaintiff's account was "current" with all ongoing monthly payment obligations.

64. However, Equifax failed to include any portion of the Positive Suppressed Data from January 16, 2014 to November 2014 in Plaintiff's Credit File.

65. Accordingly, on or about May 9, 2017, pursuant to 15 U.S.C. §1681i(a)(2), Plaintiff disputed Equifax's incomplete reporting by notifying Equifax, in writing, of the incomplete and inaccurate credit information contained in Plaintiff's Experian Disclosure.

66. Specifically, Plaintiff sent a letter, certified, return receipt, to Equifax (the "Equifax Dispute Letter #3"), requesting the above incomplete and misleading information omissions be corrected to include the Positive Suppressed Data.

67. The Plaintiff included proof of the Positive Suppressed Data, which was provided directly by BANA to Plaintiff in response to Plaintiff's request for information pursuant to 12 C.F.R.§1024.36 (the "RFI Response").

68. The RFI Response, which Plaintiff included with his Equifax Dispute Letter #3, clearly identified the Positive Suppressed Data, which Equifax failed to include in Plaintiff's Experian Disclosure.

69. After receiving the Equifax Dispute Letter #3, Equifax was required to conduct a reasonable reinvestigation into this specific account on Plaintiff's consumer report pursuant to 15 U.S.C. §1681i.

70. As part of its reinvestigation, Equifax had a duty to review and consider all relevant information provided by Plaintiff pursuant to 15 U.S.C. § 1681i(a)(4), such as the RFI Response and Positive Suppressed Data that Plaintiff included with his dispute.

71. On or about July 18, 2017, Plaintiff received notification from Equifax through its "reinvestigation" (Equifax Report No. 7183011932) that Equifax received notice of Plaintiff's dispute pursuant to 15 U.S.C. § 1681i(a)(6). However, Equifax failed to correct Plaintiff's Experian Disclosure to include all of the Positive Suppressed Data in BANA's updated tradeline.

72. A reasonable reinvestigation by Equifax would have resulted in updating the BANA tradeline to include the Positive Suppressed Data.

73. Equifax therefore failed to conduct a reasonable reinvestigation as required by 15 U.S.C. §1681i(a), and wrongly continued suppressing complete and accurate information in connection with Plaintiff's Experian Disclosure.

74. Equifax failed to review all relevant information provided by Plaintiff in the dispute to Equifax, as required by and in violation of 15 U.S.C. §1681i(a).

75. Equifax re-reported the incomplete and inaccurate misleading information on Plaintiff's Experian Disclosure. Specifically, the Positive Suppressed Data continued to remain suppressed and willfully omitted from the Plaintiff's Experian Disclosure.

76. Equifax, therefore, upon receipt of Plaintiff's dispute, failed to conduct a reasonable reinvestigation as required by 15 U.S.C. §1681i(a).

77. Failing to report and/or rereport the Positive Suppressed Data also constituted a violation of 15 U.S.C. § 1681g(a) because the lack of clarity and numerous omissions in the information reported and rereported has the tendency to confuse ordinary consumers like Plaintiff.

78. Plaintiff's efforts to correct Equifax's incomplete and inaccurate reporting were fruitless.

79. Equifax was provided evidence of its illegal suppression, and knowingly elected to not make the requested corrections to Plaintiff's Experian Disclosure.

80. Equifax's continued incomplete and inaccurate reporting of the Positive Suppressed Data in light of its knowledge of the actual errors and omissions was willful. Plaintiff is, accordingly, eligible for statutory damages, punitive damages, and attorneys' fees and costs pursuant to 15 U.S.C. § 1681n.

81. By reporting incomplete and inaccurate account information relating to the BANA' Home Mortgage Account after notice and confirmation of its errors, Equifax failed to take the appropriate measures as required under 15 U.S.C. §§1681i(a) and 1681e(b), respectively.

## **THE EXPERIAN VIOLATIONS**

### **Experian Failed to Report Complete Information about BANA Home Mortgage Account No. 10323**

82. Plaintiff requested his consumer credit file from Experian, and Experian thereafter mailed Plaintiff an incomplete consumer file dated October 26, 2016, Report No. 0827-8120-37 (the "Experian Disclosure").

83. On information and belief, Experian failed to provide a "complete" and "accurate" Experian Disclosure to Plaintiff.

84. On information and belief, Experian "suppressed" positive data being furnished from BANA.

85. Alternatively, Experian failed to report timely mortgage payments on the BANA Debt related to the Property reported by BANA.

86. This failure caused Plaintiff's Experian Disclosure to include materially misleading omissions, which in context created misperceptions about the Plaintiff's timely (yet unreflected) monthly payments to BANA.

87. Specifically, on information and belief BANA furnished the Positive Suppressed Data to Experian stating that the Plaintiff's account was "current" with all ongoing monthly payment obligations.

88. However, Experian failed to include the Positive Suppressed Data in Plaintiff's Experian Disclosure.

89. Accordingly, on or about May 9, 2017, pursuant to 15 U.S.C. §1681i(a)(2), Plaintiff disputed Experian's incomplete reporting by notifying Experian, in writing, of the incomplete and inaccurate credit information contained in Plaintiff's Experian Disclosure.

90. Specifically, Plaintiff sent a letter, certified, return receipt, to Experian (the "Experian Dispute Letter"), requesting the above incomplete and misleading information omissions be corrected to include the Positive Suppressed Data.

91. Plaintiff included proof of the Positive Suppressed Data, which was provided directly by BANA to Plaintiff in response to Plaintiff's request for information pursuant to 12 C.F.R.§1024.36 (the "RFI Response").

92. The RFI Response, which Plaintiff included with his Experian Dispute Letter, clearly identified the Positive Suppressed Data, which Experian failed to include in Plaintiff's Experian Disclosure.

93. After receiving the Experian Dispute Letter, Experian was required to conduct a reasonable reinvestigation into this specific account on Plaintiff's consumer report pursuant to 15 U.S.C. §1681i.

94. As part of its reinvestigation, Experian had a duty to review and consider all relevant information provided by Plaintiff pursuant to 15 U.S.C. § 1681i(a)(4), such as the RFI Response and Positive Suppressed Data that Plaintiff included with his dispute.

95. On or about June 9, 2017, Plaintiff received notification from Experian through its "reinvestigation" (Experian Report No. 3309-1592-04) that Experian received notice of Plaintiff's dispute pursuant to 15 U.S.C. § 1681i(a)(6), and verified the account as "updated." However, Experian failed to correct Plaintiff's Experian Disclosure to include the Positive Suppressed Data in BANA's "updated" tradeline.

96. A reasonable reinvestigation by Experian would have resulted in updating the BANA tradeline to include the Positive Suppressed Data.

97. Experian therefore failed to conduct a reasonable reinvestigation as required by 15 U.S.C. §1681i(a), and wrongly continued suppressing complete and accurate information in connection with Plaintiff's Experian Disclosure.

98. Experian failed to review all relevant information provided by Plaintiff in the dispute to Experian, as required by and in violation of 15 U.S.C. §1681i(a).

99. Experian re-reported the incomplete and inaccurate misleading information on Plaintiff's Experian Disclosure. Specifically, the Positive Suppressed Data continued to remain suppressed and willfully omitted from Plaintiff's Experian Disclosure.

100. Failing to report and/or rereport the Positive Suppressed Data also constituted a violation of 15 U.S.C. § 1681g(a) because the lack of clarity and numerous omissions in the information reported and rereported has the tendency to confuse ordinary consumers like Plaintiff.

101. Plaintiff's efforts to correct Experian's incomplete and inaccurate reporting were fruitless.

102. Experian was provided evidence of its illegal suppression, and knowingly elected to not make the requested corrections to Plaintiff's Experian Disclosure.

103. Experian's continued incomplete and inaccurate reporting of the Positive Suppressed Data in light of its knowledge of the actual errors and omissions was willful. Plaintiff is, accordingly, eligible for statutory damages, punitive damages, and attorneys' fees and costs pursuant to 15 U.S.C. § 1681n.

104. By reporting incomplete and inaccurate account information relating to the BANA' Home Mortgage Account after notice and confirmation of its errors, Experian failed to take the appropriate measures as required under 15 U.S.C. §§1681i(a) and 1681e(b), respectively.

## THE TRANSUNION VIOLATIONS

### TransUnion Failed to Report Complete Information about BANA Home Mortgage Account No. 10323

105. Plaintiff requested his consumer credit file from TransUnion, and TransUnion thereafter mailed Plaintiff an incomplete consumer file dated October 26, 2016, File Number 369326239 (the "TransUnion Disclosure").

106. On information and belief, TransUnion failed to provide a "complete" and "accurate" TransUnion Disclosure to Plaintiff.

107. On information and belief, TransUnion "suppressed" positive data being furnished from BANA.

108. Alternatively, TransUnion failed to report timely mortgage payments on the BANA Debt related to the Property reported by BANA.

109. This failure caused Plaintiff's TransUnion Disclosure to include materially misleading omissions, which in context created misperceptions about Plaintiff's timely (yet unreflected) monthly payments to BANA.

110. Specifically, BANA furnished positive credit data to TransUnion stating that Plaintiff's account was "current" and otherwise reporting the Positive Suppressed Data.

However, TransUnion failed to include the Positive Suppressed Data in Plaintiff's TransUnion Disclosure.

111. Accordingly, on or about May 9, 2017, pursuant to 15 U.S.C. §1681i(a)(2), Plaintiff disputed TransUnion's incomplete reporting by notifying TransUnion, in writing, of the incomplete and inaccurate credit information contained in Plaintiff's TransUnion Disclosure.

112. Specifically, Plaintiff sent a letter, certified, return receipt, to TransUnion (the "TransUnion Dispute Letter"), requesting the above incomplete and misleading information omissions be corrected to include the Positive Suppressed Data.

113. The Plaintiff included proof of the Positive Suppressed Data, which was provided directly by BANA to Plaintiff in response to Plaintiff's request for information pursuant to 12 C.F.R.§1024.36 (the "RFI Response").

114. The RFI Response, which Plaintiff included with his TransUnion Dispute Letter, clearly identified the Positive Suppressed Data, which TransUnion failed to include in Plaintiff's TransUnion Disclosure.

115. After receiving the TransUnion Dispute Letter, TransUnion was required to conduct a reasonable reinvestigation into this specific account on Plaintiff's consumer report pursuant to 15 U.S.C. §1681i.

116. As part of its reinvestigation, TransUnion had a duty to review and consider all relevant information provided by Plaintiff pursuant to 15 U.S.C. § 1681i(a)(4), such as the RFI Response and Positive Suppressed Data that Plaintiff included with his dispute.

117. Upon information and belief, upon receiving the TransUnion Dispute Letter, TransUnion failed to notify BANA of the dispute pursuant to its duties to do so under 15 U.S.C. § 1681i(a)(2).

118. Upon information and belief, TransUnion also failed to conduct a reasonable reinvestigation of the dispute in violation of 15 U.S.C. § 1681i(a)(1).

119. Upon information and belief, TransUnion also failed to review all relevant information provided by Plaintiff in the TransUnion Dispute Letter, as required by and in violation of 15 U.S.C. § 1681i(a).

120. A reasonable reinvestigation by TransUnion would have resulted in updating the BANA tradeline to include the Positive Suppressed Data.

121. Upon information and belief, rather than conduct a reasonable reinvestigation, TransUnion took a "one size fits all" approach simply continued to refuse to report the BANA tradeline altogether, thus depriving Plaintiff of the benefit of the Positive Suppressed Data, and completely ignoring the purpose of Plaintiff's TransUnion Dispute Letter.  Therefore, in its May 18, 2017 reinvestigation, No. 369326239-010 ("Reinvestigation"), TransUnion stated that it had simply deleted the BANA tradeline.

122. TransUnion therefore failed to conduct a reasonable reinvestigation as required by 15 U.S.C. §1681i(a), and wrongly continued suppressing complete and accurate information in connection with Plaintiff's TransUnion Disclosure.

123. Upon information and belief, TransUnion continues to re-report the incomplete and inaccurate misleading information on Plaintiff's TransUnion Disclosure by continuing to suppress and willfully omit the BANA tradeline and related Positive Suppressed Data from Plaintiff's TransUnion Disclosure.

124. Plaintiff's efforts to correct TransUnion's incomplete and inaccurate reporting were fruitless.

125. TransUnion was provided evidence of it's illegal suppression, and upon information and belief, knowingly elected to delete the BANA tradeline instead of making the requested corrections to Plaintiff's TransUnion Disclosure.

126. TransUnion's actions in deleting the BANA tradeline in light of its knowledge of the actual errors and omissions was willful.  Plaintiff is, accordingly, eligible for statutory damages, punitive damages, and attorneys' fees and costs pursuant to 15 U.S.C. § 1681n.

127. By deleting the BANA tradeline after notice and confirmation of its errors, TransUnion failed to take the appropriate measures as required under 15 U.S.C. §§1681i(a) and 1681e(b), respectively.

### FIRST CAUSE OF ACTION
### VIOLATION OF THE FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681 ET SEQ. (FCRA)

128. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

129. The foregoing acts and omissions constitute numerous and multiple willful, reckless or negligent violations of the FCRA, including but not limited to each and every one of the above-cited provisions of the FCRA, 15 U.S.C. §1681.

130. As a result of each and every willful violation of the FCRA, Plaintiff is entitled to actual damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(1); statutory damages pursuant to 15 U.S.C. § 1681n(a)(1); punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n(a)(3) from Defendants.

131. As a result of each and every negligent noncompliance of the FCRA, Plaintiff is entitled to actual damages as the Court may allow pursuant to 15 U.S.C. § 1681o(a)(1); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o(a)(2) from Defendants.

### PRAYER FOR RELIEF

Plaintiff respectfully requests the Court grant Plaintiff the following relief against Defendants:

### FIRST CAUSE OF ACTION
### VIOLATION OF THE FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681 ET SEQ. (FCRA)

- an award of actual damages pursuant to 15 U.S.C. § 1681n(a)(1);
- award of statutory damages pursuant to 15 U.S.C. § 1681n(a)(1);

- an award of punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2);
- award of costs of litigation and reasonable attorney's fees, pursuant to 15 U.S.C. § 1681n(a)(3), and 15 U.S.C. § 1681(o)(a)(1) against Defendant for each incident of negligent noncompliance of the FCRA; and
- any other relief the Court may deem just and proper.

### TRIAL BY JURY

132. Pursuant to the seventh amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

Dated: March 16, 2018

                        Respectfully submitted,

By   /s/ David H. Krieger, Esq.
       David H. Krieger, Esq.
       Nevada Bar No. 9086
       HAINES & KRIEGER, LLC
       8985 S. Eastern Ave., Suite 350
       Henderson, NV 89123

       Matthew I. Knepper, Esq.
       Nevada Bar No. 12796
       Miles N. Clark, Esq.
       Nevada Bar No. 13848
       KNEPPER & CLARK LLC
       10040 W. Cheyenne Ave., Suite 170-109
       Las Vegas, NV 89129

       Sean N. Payne, Esq.
       Nevada Bar No. 13216
       PAYNE LAW FIRM LLC
       9550 S. Eastern Ave., Suite 253-A213
       Las Vegas, NV 89123

       *Attorneys for Plaintiff*